STATE of Minnesota, Respondent,

v.

Adrian Dion WILLIAMS, Appellant.

No. C7–97–1316.

Supreme Court of Minnesota.

Oct. 22, 1998.

John M. Stuart, State Public Defender, Leslie J. Rosenberg, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Beverly J. Benson, Asst. County Atty., Minneapolis, for respondent.

## OPINION

BLATZ, Chief Judge.

In this appeal of his conviction for first-degree murder, appellant, Adrian Dion Williams, raises three claims. First, appellant claims that he was deprived of his right to present a defense when the trial court did not allow the admission of out-of-court statements regarding the victim's practice of selling fake crack cocaine. Second, appellant claims that the trial court erroneously permitted the state to introduce rebuttal testimony after the close of the defense's case. Third, appellant claims that the prosecutor committed misconduct by unfairly summarizing the evidence in her closing argument. We hold that the trial court's evidentiary rulings were not in error and the prosecutor did not engage in prosecutorial misconduct. The judgement of the trial court is affirmed.

Appellant was convicted of first-degree murder for the shooting death of Artis Brown and given a life sentence, with 30 years minimum to be served in prison. The shooting occurred at approximately 7:25 p.m. on July 21, 1995, on 31st Street West and Pleasant Avenue South in Minneapolis. The victim, known by his street name "T.C.," was riding his bicycle when appellant, also on a bicycle, fired five shots at him from a nine-millimeter semi-automatic weapon.

Appellant, known by his street names "Doughboy" or "Big Shorty," had been arrested four days earlier at the same location for possession of narcotics. He was not charged, however, because the suspected narcotics were fake crack made from wax. During the murder investigation, the police learned that the victim, Brown, had a reputation for selling fake crack in the neighborhood, and reportedly sold fake crack to appellant two weeks prior to the shooting. Together, this information led police to identify the suspect known as "Doughboy" as being the shooter and to place his photograph in a photo line-up. After viewing the photo line-up, several eyewitnesses identified appellant as the shooter. Three of these eyewitnesses also identified appellant as the shooter at trial.

In addition to the eyewitnesses, the investigating officer, Lt. Scott Gerlicher, testified for the state. He was questioned on cross-examination about statements made to another police investigator by two witnesses, Dominique Willis and Tashawn Griffin, who did not testify. Willis and Griffin had made several statements relating to the victim's practice of selling fake crack. Griffin also told the police that prior to the shooting, she had heard that four men were looking for the victim because he had sold them "fake dope." Appellant argued to the trial court that these statements provided a basis for the police to investigate "an alternative theory that wasn't

followed through." The trial court, however, sustained the state's hearsay objections to these statements and did not allow the statements to be admitted.

The state then called Malcom Hargraves, appellant's probation officer, as a witness. The state asked Hargraves if appellant had told him "anything about Artis Brown in connection with fake crack cocaine?" Hargraves responded that appellant had told him "that [Brown] had a lousy reputation in the neighborhood or in that area because he sold fake rock."

Another state's witness, Derick Amundson, a pre-trial jailmate of Williams, testified that appellant confessed to him in jail that Brown had sold appellant fake crack two weeks before the shooting. Further, Amundson testified that appellant admitted that he "rubbed his prints off the bullet casings of his gun," initiated a "confrontation" with Brown, and "shot Brown in the back of the head."

The appellant's defense at trial was that he did not shoot Brown. In support, the defense called Tawaun Lewis as an alibi witness. Lewis testified that he was with appellant at a friend's house just prior to the shooting, then left to go to a nearby Wendy's restaurant. When Lewis was inside the restaurant ordering food, he saw appellant take his bicycle and ride away. On the stand, Lewis recalled a confusing sequence of events:

> I couldn't catch [appellant], so I went back in and got my food and got to the door; I heard some shots. Then I went in and got my food, ate it * * *.

Through cross-examination, the state attempted to clarify the sequence of events to determine if Lewis was actually inside Wendy's when he heard the shots and if Lewis was able to see the shooter. Although Lewis was called as an alibi witness, the state argued that Lewis could not have seen Williams or the shooting from inside Wendy's.

The state also cross-examined Lewis about the conflicting versions of events that he gave during his prior statements and testimony. In response to the state's cross-examination, Lewis recalled speaking with Tonya Mouw, an investigator with the Hennepin County Attorney's office, about the shooting. Lewis claimed that his testimony in court was consistent with his earlier statements made to Mouw.

Lewis also admitted on the stand that his testimony in court differed from a written statement he had given to defense counsel's private investigator on October 25, 1995. In this written statement, Lewis stated that appellant took his bike from Wendy's *after* Lewis heard the shots. Further, Lewis admitted that his written statement was almost identical to the written statement of Antwand Bynum, another witness for appellant. Bynum and Lewis had made their written statements at the same time with the "assistance" of defense counsel's private investigator. The written statements were textually identical in all relevant parts regarding appellant. The only minor differences were Lewis and Bynum's description of what occurred after the shooting.

After the defense rested, the state called Mouw as a rebuttal witness. Mouw testified about the statements Lewis made to her on July 21, 1995. Mouw recalled that Lewis had stated that appellant took Lewis' bicycle from outside Wendy's, and that Lewis chased him, gave up, and returned for his food at Wendy's. After returning to Wendy's, Lewis heard five shots.

Following the state's rebuttal witness, the prosecutor delivered her closing argument. The closing argument was prefaced by the statement:

> What Counsel says at this point, the State or defense, is not evidence. The court will instruct you that you should rely on your memory, your recollection and your collective recollection of the evidence. [The closing argument is] only meant to assist you.

The prosecutor later stated that Brown sold fake crack to appellant and that the appellant was arrested "with *that* fake crack cocaine." [Emphasis added.] The prosecutor also stated: "The defendant told [his jailmate] that Artis Brown sold him fake crack cocaine. The defendant was arrested four days before the murder with the fake crack cocaine."

Finally, the prosecutor suggested to the jury that they closely examine the written statements made by Bynum and Lewis and given to defense counsel's investigator:

> [Y]ou'll have a chance to look at—the statements of Antwon [sic] Bynum and Tawaun Lewis. Please look at them carefully. Have somebody read each one simultaneously. They are word for word identical. They are not identical to their testimony before you. Their stories have changed in an identical fashion. They had one story.

## I.

■ We first consider the issue of the trial court's exclusion of the out-of-court statements concerning the victim's practice of selling fake crack. Trial court decisions on the admission of evidence are reviewed under an abuse of discretion standard that is deferential to the trial court.[1] Absent a clear abuse of discretion, the trial court's evidentiary ruling will stand.[2]

■ Appellant has presented two arguments to support his claim that the trial court erred in excluding the out-of-court statements as hearsay. First, in his brief to this court and at trial, appellant argued that by not allowing the out-of-court statements of Willis and Griffin, appellant was not able to adequately present a defense. Appellant's defense at trial was that someone else shot the victim. Appellant's evidence regarding the victim's practice of selling fake crack would have shown that other "disappointed customers" had a motive to commit the murder. This argument fails, however, as the jury was presented with evidence regarding the victim's practice of selling fake crack. Such evidence was introduced by two of the state's witnesses, Hargraves and Amundson.

■ Appellant's second argument, presented during oral argument before this court, is that the out-of-court statements were admissible as a hearsay exception under Minn. R. Evid. 804(b)(5). However, the trial court properly excluded these out-of-court statements as hearsay. Minn. R. Evid. 804(b)(5) provides for the admission of an out-of-court statement that has circumstantial guarantees of trustworthiness and is more probative for the point for which it is offered than any other available evidence. The statements at issue in the instant case had no guarantees of trustworthiness, and were offered to assert a fact that the state later asserted with more reliable evidence. In fact, the statement by Griffin concerning "four men" who had been looking for the victim was actually triple hearsay: the statement was made by an unidentified "friend" of Griffin to Griffin, then recalled by Griffin in a statement made to an investigating police officer, and eventually included in a police report introduced by Gerlicher. Gerlicher was the only declarant in this chain who actually testified at trial. Given the unreliability of these out-of-court statements, the trial court properly excluded the statements as hearsay.

## II.

■ Next, we consider the issue of the trial court's admission of the state's rebuttal evidence. Rebuttal evidence consists of that evidence which "explains, contradicts, or refutes the defendant's evidence."[3] "'[T]he determination of what constitutes proper rebuttal evidence rests almost wholly in the discretion of the trial court.'"[4]

■ Appellant claims that the trial court erred in permitting the state to call as a witness Mouw to rebut the testimony of Lewis. Appellant argues that Mouw did not explain, contradict, or refute Lewis' testimony. Furthermore, according to the appellant, allowing the state to have the "last word" before closing arguments was prejudicial to appellant's defense.

1. State v. Harris, 560 N.W.2d 672, 677 (Minn. 1997) (citing State v. Naylor, 474 N.W.2d 314, 317 (Minn.1991)).

2. State v. Kelly, 435 N.W.2d 807, 813 (Minn. 1989).

3. State v. Swanson, 498 N.W.2d 435, 440 (Minn. 1993).

4. Id. (quoting State v. Eling, 355 N.W.2d 286, 291 (Minn.1984)).

In rebuttal, Mouw recalled out-of-court statements made to her by Lewis prior to trial, when Mouw was investigating the shooting of Brown. In his statements to Mouw, Lewis claimed that appellant stole Lewis' bicycle from outside Wendy's before Lewis heard shots. This sequence of events contradicted one of the several versions of sequences that Lewis testified to at trial. Given the inconsistent and confusing testimony of Lewis, Mouw's testimony was proper rebuttal evidence.

### III.

 Finally, we consider the issue of prosecutorial misconduct during the closing argument. Our court has recognized that the prosecutor has considerable latitude and is not required to make a colorless argument.[5] The prosecutor has "the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom." [6]

Appellant claims that the prosecutor's closing argument mischaracterized the evidence and made allegations that were not supported by the evidence. Specifically, appellant challenges the prosecutor's statement that Brown sold fake crack to appellant, and appellant was arrested "with *that* fake crack cocaine." [Emphasis added.] As appellant concedes in his brief, the prosecutor's argument that Brown sold fake crack to appellant is supported by evidence from trial, notably the testimony of appellant's former jailmate. The statement that appellant was arrested with fake crack four days prior to the murder is also supported by evidence from trial. While the evidence did not specifically link appellant's fake crack to Brown, the connection was a reasonable inference. Thus, the prosecutor did not engage in misconduct by presenting this inference to the jury.

Appellant also challenges the prosecutor's characterization of the prior written statements made by Lewis and Bynum to defense counsel's private investigator. In her closing argument, the prosecutor suggests to the jury that they carefully examine the statements, as they are "word for word identical." While the statements differed in a few minor ways, the most relevant portions regarding appellant were textually identical. Given the fact that the prosecutor coupled this substantially accurate characterization of the statements with the suggestion that the jury closely examine the evidence for themselves, the prosecutor did not engage in misconduct.

Affirmed.

LANCASTER, J., took no part in the consideration or decision of this case.

---

**5.** *State v. Smith,* 541 N.W.2d 584, 589 (Minn. 1996).

