*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1666**

State of Minnesota,
Respondent,

vs.

Charles Jacob Whitcup, Jr.,
Appellant.

**Filed August 24, 2015
Reversed and remanded
Stauber, Judge**

Swift County District Court
File No. 76-CR-13-337

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Danielle H. Olson, Swift County Attorney, Benson, Minnesota (for respondent)

Julie Loftus Nelson, Nelson Criminal Defense & Appeals, P.L.L.C., Minneapolis, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Stauber, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STAUBER**, Judge

Appellant Charles Jacob Whitcup, Jr., challenges his convictions of two counts of third-degree controlled-substance crime, arguing that he was denied his right to a fair trial because of prosecutorial misconduct. We reverse and remand for a new trial.

**FACTS**

A.A. was arrested by Pope County sheriff's deputies on a controlled-substance charge. Pope County offered to drop the charges after she agreed to make controlled-drug purchases for the CEE-VI Drug Task Force. The drug task force asked her to contact Mark Whitcup (Whitcup), appellant's brother, to purchase methamphetamine (meth), but Whitcup appeared at A.A.'s apartment before the controlled-purchase procedures could be implemented. The following day, June 19, 2013, A.A. attempted to arrange another controlled buy with Whitcup, but he told her to contact appellant instead. After the drug task force implemented the controlled-purchase procedures, A.A. went to appellant's girlfriend's home. The girlfriend, N.L., opened the door, and A.A. went to the basement where she handed appellant $50, and he threw a pink baggie with meth on top of a laptop computer. A.A. gave drug task force members a pink baggie with a substance later identified as meth. At trial, A.A. testified that appellant was the only person in the basement when she purchased the meth.

The state called other witnesses, including Deputy Don Schmidt, who described the controlled-purchase procedures; BCA analyst Robert Lind, who confirmed that the substance was meth; Deputy Anthony Cruzo, a member of the drug task force, who

2

conducted surveillance of A.A. during the purchase; Shelly Lottman, an employee of the sheriff's department who pat searched A.A. after the controlled purchase; and Benson police officer Benjamin Badowich, who stopped appellant for a traffic offense on June 19, and found the recorded purchase money on appellant's person. Whitcup, who testified on behalf of the state and confirmed A.A.'s testimony, said that he wanted to collect the money for the purchase A.A. had made from him the day before and instructed appellant to either sell her drugs or get her high until he returned.

N.L. testified on behalf of appellant. N.L. stated that Whitcup and appellant had talked by telephone about money that Whitcup owed to appellant, and she was upset because she was insuring a car on Whitcup's behalf. N.L. said that she could hear the conversation because appellant always had his phone's speaker on. N.L. testified that she let A.A. into the house but then realized that she could be delivering money to appellant from Whitcup; therefore, N.L. went to the basement, where appellant and a friend, M.J., were playing a video game. N.L. said she saw A.A. drop some money on a table but saw no drugs and heard no discussion about drugs. During cross-examination, N.L. stated that she had very little contact with appellant but admitted that she received some jailhouse letters from him. The prosecutor then produced three letters that appellant had written N.L., which appeared to instruct or remind her about the events of June 19, and which contained some veiled threats toward A.A. and the prosecutor.

Appellant wrote several letters to N.L. and to others, which were monitored according to jail policy; the prosecutor collected these letters as evidence for a possible witness-tampering charge. In all, the prosecutor had collected about "half a ream" of

3

copies of letters written by appellant and mailed to various people. The prosecutor did not produce the letters during discovery, however, and appellant's counsel was unaware of their existence until the state began impeaching N.L. with their contents. The letters were marked but not offered into evidence, and the prosecutor read aloud portions of three letters. Appellant's counsel did not initially object to use of the letters during N.L.'s examination. After an extensive cross-examination, the district court inquired in a bench conference about how many letters the prosecutor intended to use because of time constraints; at this point, appellant's counsel objected, arguing that the prosecutor had violated discovery rules by failing to produce the letters in response to his discovery requests.

The prosecutor argued that she had not disclosed the letters because the state was investigating whether appellant should be charged with witness tampering, and the state was not obligated to provide them to appellant because he knew about them. She characterized her use of the letters as "rebuttal" evidence, based on N.L.'s testimony that she only infrequently heard from appellant. Appellant's counsel moved for a mistrial or, in the alternative, for limitations on the use of the letters. The district court offered to strike N.L.'s testimony, but appellant rejected the offer. After considering and declining to grant a continuance, the district court decided that the prosecutor could not continue her examination of the witness with the letters or use the letters in any way.

The jury convicted appellant of both charges. Appellant moved for a new trial because of the discovery violations. The district court denied appellant's motion, concluding that the state had committed a discovery violation but appellant was not

4

entitled to a new trial because appellant was not prejudiced by the state's actions and there was not a reasonable probability that the outcome of the trial would be different. This appeal followed.

## D E C I S I O N

Appellant challenges the district court's order denying his motion for a new trial, arguing that the prosecutor's deliberate decision not to produce discoverable material deprived him of his fair trial rights. We review the district court's denial of a new trial motion for an abuse of discretion. *State v. Brown*, 815 N.W.2d 609, 621 (Minn. 2012). Whether the state has committed a discovery violation is a question of law subject to de novo review. *State v. Miller*, 754 N.W.2d 686, 705 (Minn. 2008).[1]

Minn. R. Crim. P. 9.01 directs the prosecutor to "allow access [to the defense] at any reasonable time to all matters within the prosecutor's possession or control that relate to the case," with the exception of work product, work product reports, and certain protected witnesses. Minn. R. Crim. P. 9.01, subds. 1, 3. The duty to disclose includes all documents related to the case and all materials in the possession and control of any person working with the prosecution. *Id.*, subds. 1(3)(a); 1a(1). The language of the rule is more expansive than that in *Brady*, under which the prosecution is obligated to disclose "evidence favorable to an accused" that is "material either to guilt or to punishment,"

---

[1] Appellant has not asserted a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

including impeachment evidence. 373 U.S. at 87; 83 S. Ct. at 1196-97; *Brown*, 815 N.W.2d at 622.

Rule 9.01 does not limit the prosecutor's duty to disclose exculpatory evidence favorable to the accused or impeachment evidence. Rather, the rule imposes a broad duty on the prosecutor to turn over all materials requested by a defendant that relate to the case. Minn. R. Crim. P. 9.01, subd. 1. It is clear from the record that appellant made a blanket discovery request, the prosecution had letters collected from his jail correspondence that related to the case, and the prosecutor deliberately did not provide appellant with copies of the letters. The rule states that the prosecutor "must" make the disclosure and it includes "any" documents that relate to the case. *Id.; see also State v. Palubicki*, 700 N.W.2d 476, 490 (Minn. 2005) (noting mandatory language of rule directives). Nothing in the rule limits the prosecutor's duty to disclose when a defendant is the source of the materials.

The state argues that the letters were rebuttal evidence that it is not obligated to disclose, relying on *State v. Yang*, 627 N.W.2d 666, 677 (Minn. App. 2001), *review denied* (Minn. July 24, 2001), in which this court stated that "[d]isclosure rules do not apply to rebuttal evidence." The district court has discretion to determine "what constitutes proper rebuttal evidence." *State v. Williams*, 586 N.W.2d 123, 126 (Minn. 1998) (quotation omitted). The district court here concluded that the evidence used by the prosecution cannot be classified as rebuttal evidence not subject to disclosure, and determined that the prosecutor violated the discovery rules. We agree.

"[I]n general, rebuttal evidence consists of that which explains, contradicts, or refutes the defendant's evidence." *State v. Swaney*, 787 N.W.2d 541, 563 (Minn. 2010) (quotation omitted). This court relied on this very general definition of rebuttal evidence in *Yang*. 627 N.W.2d at 677. Minn. R. Crim. P. 26.03, subd. 12(g) provides that "[t]he prosecutor may rebut the defense evidence, and the defense may rebut the prosecutor's evidence." *See also Swaney*, 787 N.W.2d at 562-64 (analyzing rebuttal evidence as evidence introduced after close of defendant's case-in-chief to rebut defense testimony). "Rebuttal" is defined as "[i]n-court contradiction of an adverse party's evidence." *Black's Law Dictionary* 1381 (9th ed. 2009). "Impeachment," on the other hand, is "[t]he discrediting of a witness's testimony by confronting the witness with his or her specific untruthful acts, prior convictions, prior inconsistent statements, or the like." *Id.* at 821. Here, the prosecutor did not rebut N.L.'s testimony; she impeached N.L.'s credibility with the letters. Impeachment evidence must be provided during discovery. *See Miller*, 754 N.W.2d at 706 (concluding that state has obligation to disclose exculpatory evidence, including impeachment evidence, based on *Brady*).

We review the district court's decision "on whether to impose sanctions for discovery violations for an abuse of discretion." *Palubicki*, 700 N.W.2d at 489.

> Generally, without a showing of prejudice to the defendant, the state's violation of a discovery rule will not result in a new trial. . . . A [district] court's determination should be reversed on appeal only when the prosecutor's misconduct, viewed in the light of the whole record, appears to be inexcusable and so serious and prejudicial that the defendant's right to a fair trial was denied. But the misconduct is harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the error.

7

*Id.* (citations and quotations omitted). The district court concluded that appellant was not prejudiced by the discovery violation because the evidence against appellant was strong, and the verdict could not be attributed to the discovery violation. We disagree.

On this record, we are presented with a deliberate and inexcusable violation of a prosecutor's clear duty to disclose "all matters within the prosecutor's possession or control that relate to a case." Minn. R. Crim. P. 9.01, subd. 1. Although the record evidence could establish appellant's guilt,

> even the strongest evidence of guilt does not eliminate a defendant's right to a fair trial. The role of the prosecutor and [district] court is not simply to convict the guilty[;] they are also responsible for providing a procedurally fair trial. The state has an overriding obligation, shared by the court, to see that the defendant receives a fair trial, regardless of the defendant's culpability.

*State v. Mayhorn*, 720 N.W.2d 776, 791 (Minn. 2006) (quotations and citations omitted). The prosecutor's actions here were not the result of an inadvertent mistake in the heat of trial, but were part of a deliberate and knowing plan to withhold requested discovery materials in order to gain the advantage of surprise. We cannot ignore such a blatant violation of the prosecutor's "obligation . . . to guard the rights of the accused as well as to enforce the rights of the public." *Id.* at 790 (quotation omitted). We therefore reverse appellant's convictions and remand this matter for a new trial.

**Reversed and remanded.**