*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1981**

State of Minnesota,
Respondent,

vs.

Shawn Patrick Rush,
Appellant.

**Filed October 11, 2016
Affirmed
Stauber, Judge**

Ramsey County District Court
File No. 62-CR-15-253

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Stauber, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from his conviction of possession of a theft tool, appellant argues that the prosecutor committed prejudicial misconduct when he argued during his rebuttal

closing argument that the jury could consider that appellant failed to call a witness referenced in appellant's testimony when evaluating his credibility. Because the state demonstrated that there was no reasonable possibility that the misconduct significantly affected the jury's verdict, we affirm.

## FACTS

In January 2015, appellant Shawn Rush was charged with possession of a theft tool in violation of Minn. Stat. § 609.59 (2014). At trial, A.K.A. testified that he is the owner of an auto-body-repair shop in Maplewood. According to A.K.A., his business is "connected" to a car-wash business, and, depending on how busy he is, he may have anywhere from 10 to 30 cars parked in the parking lot.

A.K.A. testified that on November 7, 2014, he noticed something moving underneath one of his Jeep Grand Cherokees, but that he "didn't pay attention" to it because he was moving a car for a customer. A few minutes later, however, when he returned with another vehicle, A.K.A. observed the Jeep "wobbling," and when he looked down, he saw two legs sticking out from underneath the Jeep. According to A.K.A., a person later identified as appellant, was lying on his back with his "toes pointed up in the air." A.K.A. could also hear sounds coming from under the Jeep like "something . . . metal to metal."

A.K.A. testified that he yelled at appellant, and when appellant stood up, he was holding a pipe cutter. Appellant then tried to run away, but A.K.A. and his employees were able to detain him until the police arrived. Further investigation revealed that one side of the Jeep's catalytic converter had been "cut off," and "the other side was almost cut off."

2

A.K.A. claimed that "a lot" of catalytic converters had been stolen from his and a nearby business property and that a used catalytic converter can garner $100 to $150 in cash.

Appellant denied possessing the pipe cutter or trying to steal the catalytic converter. Instead, appellant explained that he was at the car wash next to A.K.A.'s body shop with his friend B.P. According to appellant, he decided to walk home from the car wash because he was tired of waiting while B.P. cleaned his car. Appellant claimed that as he "cut between the cars" on A.K.A.'s lot, he dropped his cigarette lighter, and when he "crawled" underneath the car to pick it up, he noticed a tool next to his lighter. Appellant testified that as he was retrieving his lighter, he heard someone yelling at him and that when he crawled out from underneath the vehicle, A.K.A. and his employees detained him.

Appellant did not call his friend B.P. as a witness in his defense. During rebuttal closing argument, the prosecutor mentioned B.P.'s absence from the proceedings and invited the jury to judge the credibility of appellant's story based on B.P.'s absence from the trial. Appellant did not object to the prosecutor's comments. The jury subsequently found appellant guilty of the charged offense. The district court then stayed imposition of sentence and placed appellant on probation. This appeal followed.

## D E C I S I O N

This court reviews unobjected-to alleged prosecutorial misconduct under a modified plain-error test. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012). Three prongs must be satisfied under this test: there must be error, that is plain, and that affected the defendant's substantial rights. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). The defendant must establish the first two prongs of the test before the burden shifts to

3

the state to prove that the error did not affect the defendant's substantial rights. *Carridine*, 812 N.W.2d at 146. If we determine that a plain error affected the defendant's substantial rights, we "may correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Mosley*, 853 N.W.2d 789, 801 (Minn. 2014), *cert denied* 135 S. Ct. 1185 (2015) (quotations omitted)

A prosecutor has "considerable latitude" in a closing argument. *State v. Williams*, 586 N.W.2d 123, 127 (Minn. 1998). But "[i]t is well settled that a prosecutor may not comment on a defendant's failure to call a witness." *State v. Mayhorn*, 720 N.W.2d 776, 787 (Minn. 2006). The supreme court has provided two reasons for this rule: "(1) the comment suggests that the defendant bears some burden of proof; and (2) the comment suggests that the defendant did not call the witness because his or her testimony would be unfavorable." *Id.*

Appellant argues that it was plain error for the prosecutor to comment on appellant's failure to call B.P. as a witness. The state concedes that the "prosecutor's argument was plainly erroneous." But the state argues that the error did not affect appellant's substantial rights because the evidence against him was "overwhelming."

We agree. The state bears the burden to "show that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Ramey*, 721 N.W.2d at 302 (quotation omitted). We consider "the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007).

4

Here, the evidence against appellant was very strong. A.K.A. testified that on the date of the alleged offense, he initially observed movement under a Jeep while moving a vehicle, and, when he returned to the Jeep a few minutes later, he observed appellant underneath the vehicle. According to A.K.A., appellant was lying underneath the vehicle with his toes pointed in the air as if he was doing something to the undercarriage of the Jeep. A.K.A testified that when he yelled, appellant emerged from underneath the vehicle holding a pipe cutter and tried to flee the scene. A.K.A. testified that his body shop does not use pipe cutters and does not work on vehicles outside due to city regulations. Further evidence showed that the exhaust pipe next to the catalytic converter had fresh cut marks, and A.K.A testified that a used catalytic converter can garner $100 to $150 in cash. A.K.A. also testified that "a lot" of catalytic converters had been stolen from his and a nearby business property. Thus, the prosecutor's comment noting appellant's failure to produce B.P. as a witness had very little impact on the case.

Moreover, a review of the record demonstrates that the misconduct was not pervasive. The misconduct was brief, at the end of trial, and there are no other allegations of prosecutorial misconduct. Although appellant did not have the opportunity to rebut the argument because the misconduct occurred during rebuttal, the state's demonstration that its case was very strong and that the misconduct was not pervasive show that the error did not affect appellant's substantial rights. Therefore, appellant is not entitled to a new trial.

**Affirmed.**